DEAN M. HOTTLE *v.* BDO SEIDMAN, LLP
(AC 22636)

BDO SEIDMAN, LLP *v.* DEAN M. HOTTLE
(AC 22666)

Foti, Schaller and Peters, Js.

Argued September 19—officially released December 24, 2002

*William J. Wenzel,* with whom was *Aimee J. Wood,* for the appellant (plaintiff in the first case, defendant in the second case).

*Donald E. Frechette,* with whom, on the brief, was *Jeffrey J. Medeiros,* for the appellee (defendant in the first case, plaintiff in the second case).

*Opinion*

PETERS, J. The Federal Arbitration Act (arbitration act), 9 U.S.C. § 1 et seq., establishes a federal policy favoring arbitration. These appeals raise the question of whether an arbitration panel is disqualified because of structural bias if the panel consists only of partners in the accounting firm. The trial court concluded that an arbitration agreement including such a description of eligible arbitrators was enforceable against a claimant who was a former member of the partnership. We agree.

These appeals arise out of a dispute over the payment of compensation between the plaintiff, Dean M. Hottle, a former partner, and the defendant partnership, BDO Seidman, LLP, an accounting firm. After his withdrawal from the firm, the plaintiff initiated judicial proceedings by filing an application for a prejudgment remedy. In response, the defendant filed a motion to stay the court proceedings and an independent action to compel arbitration[1] under §§ 3 and 4 of the arbitration act.[2] The

[1] In the action to compel arbitration, BDO Seidman, LLP, is the plaintiff and Hottle is the defendant. For convenience, we refer to the parties by their status in the first case, that is, to Hottle as the plaintiff and to BDO Seidman, LLP, as the defendant.

[2] Section 3 of the arbitration act provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

Section 4 of the arbitration act provides in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

defendant argued that the plaintiff was obligated to arbitrate his claims pursuant to § 14.8 of the partnership agreement.[3] The trial court agreed and rendered judgment in favor of the defendant. The plaintiff has appealed.[4]

In support of his appeals, the plaintiff argues that the arbitration provision is unenforceable because it does

in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . ." 9 U.S.C. § 4.

[3] Section 14.8 of the partnership agreement states: "Any controversy or dispute relating to this agreement or to the Partnership and its affairs shall be resolved and disposed of in accordance with this section, except that any accounting provided for in this agreement, to be conclusive, shall not be subject to this procedure, but shall be conclusive upon the Partners and the Partners agree and accept to be bound by any such accounting. Any dispute or controversy shall be considered and decided by an arbitration panel consisting of two (2) members of the Board of Directors (other than the Chairman and Chief Executive Partner) selected by the Board of Directors and three (3) Partners from the Partnership's practice offices who are not members of the Board of Directors. The members of the arbitration panel shall be mutually agreed to by the Board of Directors and the parties to the controversy or dispute, provided that no member of the panel shall be from an office in which any complaining Partner was located at the time of the filing of the complaint, nor be otherwise involved in the controversy or dispute. The arbitration panel shall be selected as soon as possible after notice to the Partnership by any Partner that such a controversy or dispute exists. The conduct of the arbitration shall be in accordance with such procedures as the Board of Directors adopts and communicates to the Partners. The vote of a majority of the arbitration panel shall determine the resolution and disposition of any such dispute or controversy. The determination of such arbitration panel shall be conclusive and binding on all the Partners, and shall not be subject to further determination in any type of proceeding within or without the Partnership."

[4] We note that, under Connecticut law, the trial court's ruling to compel arbitration is a final judgment. *Success Centers, Inc.* v. *Huntington Learning Centers, Inc.*, 223 Conn. 761, 768–69, 613 A.2d 1320 (1992); see also *Travelers Ins. Co.* v. *General Electric Co.*, 230 Conn. 106, 107–108, 644 A.2d 346 (1994). The arbitration act has not been held to supersede state procedural laws. *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 477 n.6, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).

not provide for a neutral third party decision maker.[5] It is the defendant that controls the list of prospective arbitrators, all of whom are partners of the firm. For this reason, the plaintiff contends that the proceedings authorized by § 14.8 do not qualify as an arbitration agreement. The plaintiff therefore urges us to reverse the trial court's ruling staying his court action and compelling arbitration.

The defendant argues, to the contrary, that the arbitration provision is not unenforceable simply because partners serve as arbitrators. The defendant also contends that the plaintiff knowingly signed the partnership agreement and cannot now claim to have been unaware of its terms. As long as the arbitral process affords a fundamental level of fairness, the defendant argues, the trial court properly compelled the parties to proceed to arbitration.

These appeals require us to construe the terms of the partnership agreement. The parties have stipulated that New York law governs the agreement.[6] Under New York law, the interpretation of a contract is a question of law and, accordingly, our review is plenary. *805 Third Avenue Co.* v. *M.W. Realty Associates*, 58 N.Y.2d 447, 451, 448 N.E.2d 445, 461 N.Y.S.2d 778 (1983).

I

The arbitration act creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."[7] *Moses H.*

---

[5] The partners making up the pool of arbitrators are located in offices throughout the United States.

[6] Section 16.9 of the agreement contains a choice of law provision stating that "[t]his agreement, its validity, construction, administration and effect, shall be governed by and construed in accordance with the laws of the State of New York."

[7] This body of law emanates from § 2 of the arbitration act. This section provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to

*Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). The act governs any arbitration agreement "involving commerce"; 9 U.S.C. § 2; whether the case arises in state court or in federal court. *Southland Corp.* v. *Keating*, 465 U.S. 1, 14–15, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). Federal law has, however, looked to state law to provide basic contract principles to supplement the act. *Doctor's Associates, Inc.* v. *Casarotto*, 517 U.S. 681, 686–87, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996).

As a threshold matter, we must determine, therefore, whether the arbitration act applies to § 14.8 of the partnership agreement. Section 1 of the act defines "commerce" to include "commerce among the several States . . . ." 9 U.S.C. § 1. The United States Supreme Court has construed § 1 broadly. The court has explained that "involving commerce" is the equivalent of "affecting commerce," and accordingly, the term "signals an intent to exercise Congress' commerce power to the full." (Internal quotation marks omitted.) *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).

The defendant is a nationwide accounting firm with offices in several states. The plaintiff also had clients located both within and outside of the state of New York. We conclude that the partnership agreement "involves commerce" and is governed by the arbitration act. See id., 281–82.

Pursuant to the arbitration act, we must decide whether the court properly granted the motion to stay court proceedings and to compel arbitration. 9 U.S.C. §§ 3, 4. Under the circumstances of this case, the court

submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2001).

was required to resolve two issues. It had to determine (1) whether the parties agreed to arbitrate, and (2) whether the agreement was enforceable.

## II

Before addressing the enforceability of the arbitration provision, we first note what these appeals do not involve. The parties do not dispute the existence of the partnership agreement under New York law. State law governs issues of formation. *Doctor's Associates, Inc.* v. *Casarotto,* supra, 517 U.S. 686–87.

Similarly, the parties do not dispute that the plaintiff knowingly agreed to the arbitration clause in the partnership agreement and to the standard expectations associated with arbitration. Having signed the agreement, the plaintiff is presumed, under New York law, to have knowledge of its contents. *Metzger* v. *Aetna Ins. Co.,* 227 N.Y. 411, 416, 125 N.E. 814 (1920). It is well established that the parties may define the arbitral process by contract. *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). We conclude, therefore, that the parties properly entered into an agreement to arbitrate.

Finally, the parties agree that their dispute falls within the scope of § 14.8 of the partnership agreement. According to the federal policy favoring arbitration, arbitration agreements should be construed as broadly as possible. *Oldroyd* v. *Elmira Savings Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998). Any doubt concerning the scope of arbitrable issues is to be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.,* supra, 460 U.S. 24–25. "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said *with positive assurance that the arbitration clause is not susceptible of an interpre-*

*tation that [it] covers the asserted dispute.*" (Emphasis in original; internal quotation marks omitted.) *Oldroyd* v. *Elmira Savings Bank, FSB*, supra, 76.

The arbitration provision in this case provides in relevant part that "[a]ny controversy or dispute relating to this agreement or to the Partnership and its affairs shall be resolved and disposed of in accordance with this section . . . ." The dispute in this case concerns the amount of compensation owed to the plaintiff under the withdrawal agreement. The withdrawal agreement to which the plaintiff subscribed incorporated the arbitration provision contained in the partnership agreement. Accordingly, we conclude that the plaintiff's claims fall well within the scope of the arbitration agreement.

### III

We now turn to the enforceability of the arbitration provision. The plaintiff challenges its validity on the ground that it deprives him of a right to a neutral arbitrator because the designated arbitration pool consists only of partners in the accounting firm. We disagree.

Although the requirement of a neutral arbitrator has often been stated; *Wolsey, Ltd.* v. *Foodmaker, Inc.*, 144 F.3d 1205, 1208 (9th Cir. 1998); *Harrison* v. *Nissan Motor Corp. in U.S.A.*, 111 F.3d 343, 350 (3d Cir. 1997); *AMF, Inc.* v. *Brunswick Corp.*, 621 F. Sup. 456, 460 (E.D.N.Y. 1985); the parties have not cited, and we have not found, an authoritative definition of the requisite neutrality. As a matter of first impression, we hold that neutrality requires an absence of structural bias that demonstrates probable partiality in favor of one of the parties to the dispute.

Some courts have phrased the need for neutrality in terms of "institutional bias" and "evident partiality." The arbitration act allows a court to vacate an award

because of "evident partiality" on the part of the arbitrators. 9 U.S.C. § 10 (a) (2). "Evident partiality" requires a showing of a "reasonable impression of partiality on the arbitrator's behalf." (Internal quotation marks omitted.) *Scott* v. *Prudential Securities, Inc.*, 141 F.3d 1007, 1015 (11th Cir. 1998), cert. denied, 525 U.S. 1068, 119 S. Ct. 798, 142 L. Ed. 2d 660 (1999). The alleged partiality must be "direct, definite and capable of demonstration rather than remote, uncertain and speculative." (Internal quotation marks omitted.) Id.; *Harter* v. *Iowa Grain Co.*, 220 F.3d 544, 553 (7th Cir. 2000). This standard requires more than an appearance of bias, but less than a showing of actual bias. *Andersons, Inc.* v. *Horton Farms, Inc.*, 166 F.3d 308, 325 (6th Cir. 1998).

For present purposes, we treat these terms as functionally identical to structural bias. Appearance of bias is not, however, enough to disqualify an arbitrator. *Harter* v. *Iowa Grain Co.*, supra, 220 F.3d 555–56; *Andersons, Inc.* v. *Horton Farms, Inc.*, supra, 166 F.3d 329. Connecticut law is to the same effect. *Clisham* v. *Board of Police Commissioners*, 223 Conn. 354, 361–62, 613 A.2d 254 (1992).

We have found no case that is identical to this case in all respects. In *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999), and *Woods* v. *Saturn Distribution Corp.*, 78 F.3d 424 (9th Cir.), cert. dismissed, 518 U.S. 1051, 117 S. Ct. 30, 135 L. Ed. 2d 1123 (1996), however, the courts discussed structural bias in a manner that we find informative. It is true that the relationships in those cases were not that of a partner to a partnership. Nonetheless, the cases are relevant to the resolution of the issue that is before us.

In *Rosenberg*, the United States Court of Appeals for the First Circuit considered a claim of structural bias arising out of a close relationship between the New

York Stock Exchange and a member of the exchange. *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, supra, 170 F.3d 14–16. As in this case, the dispute arose prior to the selection of the arbitration panel. The plaintiff employee had signed the standard "U-4 form" required of all employees in the securities industry. Id., 4. In response to the plaintiff's subsequent action alleging age and gender discrimination, the defendant employer filed a motion to compel arbitration before a New York Stock Exchange arbitration panel. The court determined that the exchange's arbitration rules were not structurally biased. The court nonetheless affirmed the District Court's judgment on an alternate ground of waiver.[8] Id., 18–19.

In *Woods*, the United States Court of Appeals for the Ninth Circuit held that bias is not established by a demonstration that prospective arbitrators have a direct pecuniary relationship with one of the parties to the dispute. The parties agreed to arbitrate a dispute about a claim of breach of a franchise agreement. *Woods* v. *Saturn Distribution Corp.*, supra, 78 F.3d 426. After the panel issued an award favoring Saturn Distribution Corporation, the franchisee filed a motion to vacate the award. Id. The District Court declined to do so. Id. On appeal, the Court of Appeals rejected the franchisee's argument that an arbitration panel consisting of two Saturn dealers and two Saturn employees was structurally biased. The court observed that the franchisee, when he signed the franchise agreement, was aware of the relationship between the prospective arbitrators and the parties. Id., 428. Significantly, the court held that this financial relationship, in and of itself, did not rise to the level of "evident partiality." Id., 428–29.

---

[8] The plaintiff relies heavily on the contrary ruling of the District Court in *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 995 F. Sup. 190 (D. Mass. 1998). Such reliance is misplaced in light of the decision of the Court of Appeals.

Several other federal circuits, in their review of the propriety of arbitration awards, have considered and addressed claims of structural bias. The fact that those cases, like *Woods*, arise in the context of postaward challenges does not diminish the guidance that they provide in this case. The claim is the same: the arbitration provision is alleged to be unenforceable because of the pecuniary relationship between the pool of prospective arbitrators and one of the parties to the dispute.

Those cases, like the other federal cases cite, hold that a structural linkage of the arbitration panel to one side of the dispute does not prove a violation of § 10 (a) (2). Industry relationships may demonstrate an appearance of bias, but do not in and of themselves establish "evident partiality." *Harter* v. *Iowa Grain Co.*, supra, 220 F.3d 555-57; *Andersons, Inc.* v. *Horton Farms, Inc.*, supra, 166 F.3d 325-26, 328-29; *Scott* v. *Prudential Securities, Inc.*, supra, 141 F.3d 1015-16.

The plaintiff has not demonstrated the likelihood of any significant financial incentive that would, in fact, influence present partners as potential arbitrators. Unsurprisingly, before the selection of the arbitral panel, it is difficult to present any such evidence. At this juncture, the plaintiff's claims demonstrate nothing more than an appearance of bias and that is not enough to demonstrate structural bias.

In his argument for reversal of the judgment of the trial court, the plaintiff relies on several cases rejecting arbitration provisions that strongly favored one side.[9]

---

[9] The plaintiff also argues that the discovery process is inherently unfair. Arbitration procedures must conform to notions of fundamental fairness. "[A] fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias." *Bowles Financial Group, Inc.* v. *Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994). The defendant's arbitration rules, however, which provide for notice and the presentation of evidence, are not fundamentally unfair.

These cases are readily distinguishable. They have refused to enforce arbitration provisions on the ground of unconscionability.[10] *Murray* v. *United Food & Commercial Workers International Union*, 289 F.3d 297, 302–303 (4th Cir. 2002); *Hooters of America, Inc.* v. *Phillips*, 173 F.3d 933, 938–40 (4th Cir. 1999).

In finding unconscionability, these decisions emphasize the unequal economic power and difference in sophistication between the contracting parties. The contracting parties therein consisted of an employer and employee (or job applicant). The employers had an overwhelming economic advantage. By contrast, this plaintiff is an educated and experienced professional who knowingly entered into a partnership agreement that fully described the applicable arbitration agreement.

Finally, the plaintiff argues that because a partnership and its partners, for many purposes, are viewed as a single legal entity, the arbitration provision improperly

---

[10] The plaintiff also relies on *Penn* v. *Ryan's Family Steak Houses, Inc.*, 95 F. Sup. 2d 940 (N.D. Ind. 2000), aff'd, 269 F.3d 753 (7th Cir. 2001). In that case, an employee signed a job application that included an arbitration clause. That clause provided that Employment Dispute Services, Inc. (EDS), would resolve all disputes between the defendant and its employees. Id., 941. After being terminated, the employee brought an action against the employer, alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 et seq. *Penn* v. *Ryan's Family Steak Houses, Inc.*, supra, 941. The employer filed a motion to compel arbitration under the arbitration act. Id. The District Court determined that the arbitration agreement was unenforceable because it was structurally biased and not fully communicated to the employee. Id., 946–48, 955.

The Court of Appeals affirmed on different grounds. *Penn* v. *Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 755 (7th Cir. 2001). That court determined that the agreement between the employer and EDS was so vague as to be unenforceable. Id., 758–60.

Even if the District Court's opinion had some precedential value, it would not aid the plaintiff in the present case. The court based its decision largely on *Hooters of America, Inc.* v. *Phillips*, 173 F.3d 933 (4th Cir. 1999). As in *Hooters of America, Inc.*, the District Court's determination is not determinative in the plaintiff's situation.

allows the defendant to arbitrate its own disputes. The defendant is a limited liability partnership formed under New York law. See, e.g., N.Y. Partnership Law §§ 2, 121-1500 (McKinney Sup. 2002). Generally, a partnership and its partners share the same legal identity. *Williams* v. *Hartshorn*, 296 N.Y. 49, 51, 69 N.E.2d 557 (1946); *Dembitzer* v. *Chera*, 285 App. Div. 2d 525, 576, 728 N.Y.S.2d 78 (2001). The plaintiff has, however, made no showing that the New York statute that describes the relationship between the partners also applies to the validity of an arbitration provision.

We therefore conclude that the arbitration provision contained in § 14.8 of the partnership agreement is enforceable against the plaintiff. The arbitral process is not structurally biased against the plaintiff simply because of the relationship between the prospective arbitrators and the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.