******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ELIZABETH ISENBURG *v.* MATTHEW ISENBURG
(AC 38669)

DiPentima, C. J., and Sheldon and Harper, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia,
breach of contract. The plaintiff and the defendant were in a relationship
and lived together for fourteen years, and although the parties never
married, the plaintiff legally changed her last name to that of the defen-
dant. Before their relationship began, the defendant owned a photo-
graphic collection, which he sold in 2012 for fifteen million dollars.
Several months after the sale, the parties' relationship ended. The plain-
tiff brought this action claiming, inter alia, that the defendant had
breached certain contracts he had entered into with her, under which
they had agreed that she would contribute to the defendant's household
and to certain of his businesses, investment and collection ventures in
exchange for which he would share equally with her income from such
businesses and ventures and ownership of all assets he acquired after
the formation of the contracts. Following a court trial, the court rendered
judgment in part for the plaintiff, awarding her certain property. The
plaintiff appealed to this court claiming, inter alia, that the trial court
erred by excluding large portions of exhibits she had offered into evi-
dence at trial and by not recusing itself sua sponte from the case. *Held*:
1. The plaintiff's claim that the trial court improperly excluded certain
   evidence lacked merit; the trial court never made the challenged ruling
   as alleged by the plaintiff, as each of the allegedly excluded documents
   was actually admitted into evidence.
2. The trial court did not abuse its discretion in failing to recuse itself from
   the case; the plaintiff, in claiming that the trial judge, as a married man,
   was biased against her because she was living with the defendant as
   an unmarried couple, failed to present any basis for finding that a
   reasonable person would question the trial judge's impartiality or that
   the judge's disqualification from the case was warranted.
3. The trial court's findings that there was no express or implied contract
   between the plaintiff and the defendant, that the parties' relationship
   was purely social, and that the defendant did not owe the plaintiff any
   fiduciary duty were not clearly erroneous: the trial court, which cited
   to and relied on substantial evidence in the record in reaching its conclu-
   sion that there was no contract between the plaintiff and the defendant,
   found that the defendant never made any promise to the plaintiff, spoken
   or unspoken, that if she worked with him, he would give her any portion
   of his photographic collection, and that the plaintiff had never made
   any meaningful contribution to the defendant's investment ventures or
   photographic collection, which was well established long before the
   plaintiff's relationship and alleged collaboration with the defendant
   began, and in light of the court's finding regarding the nature of the
   parties' relationship, which was not clearly erroneous, the court did not
   err in rejecting the plaintiff's claim that the defendant breached a fidu-
   ciary duty to her; moreover, to the extent that the plaintiff attempted
   to reclassify her claim of breach of fiduciary duty as a claim arising
   from the parties' business relationship, the claim was never presented
   to or decided by the trial court and, thus, was not properly preserved
   for review on appeal.
4. The plaintiff could not prevail on her claim that the trial court erred in
   not fashioning a remedy that awarded her certain specific damages or
   other relief; that court did not abuse its discretion in determining what
   damages and other relief to award the plaintiff, who failed to show that
   she was entitled to certain claimed damages.

Argued September 25—officially released December 19, 2017

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior

Court in the judicial district of New London; thereafter, the matter was transferred to the judicial district of Hartford, Complex Litigation Docket; subsequently, the court, *Moukawsher, J.*, granted the defendant's motion to strike the matter from the jury docket; thereafter, the matter was tried to the court, *Moukawsher, J.*, judgment in part for the plaintiff, from which the plaintiff appealed to this court. *Affirmed.*

*Elizabeth Isenburg*, self-represented, the appellant (plaintiff).

*Andrew W. Krevolin*, with whom was *Denise Lucchio*, for the appellee (defendant).

*Opinion*

SHELDON, J. The plaintiff, Elizabeth Isenburg,[1] appeals from the judgment of the trial court, rendered after a trial to the court, awarding her limited damages and other relief against the defendant, Matthew Isenburg, on multiple claims against him.[2] The following facts, as found by the trial court, are relevant to this appeal. The plaintiff and the defendant were in a relationship for fourteen years, from 1998 to 2012. During that period, the plaintiff lived in the defendant's home. Long before the parties' relationship began, the defendant owned an extensive collection of early photographs and photographic ephemera (photographic collection), which he ultimately sold in 2012 for fifteen million dollars. Several months after the sale of the photographic collection, the parties' relationship ended, and the plaintiff moved out of the defendant's home.

At trial, the plaintiff claimed that the defendant had breached express and implied contracts he had entered into with her, under which they had agreed that she would contribute her time, efforts, talents and resources to the defendant's household, businesses, and investment and collection ventures, in exchange for which he would share equally with her both the income from such businesses and other ventures and the ownership of all assets he acquired after the formation of the contract. The plaintiff further claimed that: the defendant had fraudulently misrepresented to her his intentions concerning the foregoing agreement in order to induce her to devote herself completely to him, and that she had relied on those fraudulent misrepresentations to her injury, loss and damage; the defendant had defrauded her by taking great pains to gain her undivided trust and loyalty, causing her to enter into a confidential and/or special relationship with him, in which she became wholly dependent upon him for her support and sustenance and he assumed a fiduciary duty to her to provide for her material needs; the defendant breached his fiduciary duty to her by unilaterally closing several joint bank accounts that he had opened in order to provide for her support and causing her to move out of his home without compensation for the services she had provided to the defendant and his businesses and other ventures; the defendant had been unjustly enriched because the plaintiff's contributions to his home and business and other ventures had spared him substantial expenses, for which he had failed to pay her; the defendant had converted certain items of her personal property by selling such items, without her knowledge or consent, as part of his photographic collection; and finally, the defendant's conduct in repudiating their agreement by causing her to vacate his home, then denying her claim to having a financial interest in his real or personal property, had given rise to a constructive and/or resulting trust in her favor with

respect to such property.

The court rejected all of the foregoing claims, finding that the plaintiff and the defendant had always had only a social, not a business, relationship, and that all of the defendant's promises to the plaintiff concerning the future had always been conditioned upon the continuation of their social relationship. The court agreed with the plaintiff that the defendant had given her certain specific items[3] during the course of their relationship, and thus ordered the defendant to return those items to the plaintiff. The court also ordered the defendant to return to the plaintiff certain items of her personal property that were still in his or his agent's control, including: the contents of a storage unit; items that the plaintiff brought with her when she moved into the defendant's home; and all of the plaintiff's clothing that she had left in his home when she moved out. Finally, the court ordered the defendant to pay the plaintiff $900 to replace certain items of her personal property that were broken while they were being stored in the storage unit. The court ruled, however, that the plaintiff was not entitled to, and thus it did not award her, any proceeds from the sale of the defendant's photographic collection, any of the money that had been in any joint banking accounts that the defendant had opened and maintained in the course of their relationship, or any funds compensating her for her claimed one-half interest in the defendant's home.

On appeal, the plaintiff claims that the trial court erred by: (1) excluding large portions of certain exhibits she had offered into evidence at trial; (2) not recusing itself, sua sponte, from the case; (3) finding that there was no express or implied contract between her and the defendant; (4) finding that the defendant did not owe her any fiduciary duty, much less breach such a duty to her; and (5) failing to award her certain other specific damages and property.[4] We affirm the judgment of the trial court.

I

As her first claim of error, the plaintiff challenges the trial court's alleged exclusion of certain exhibits which she offered into evidence at trial. The plaintiff claims, more particularly, that the trial court erred by excluding large portions of a compendium of documents that she had attempted to introduce, admitting from it only three poems that the defendant had written to her. The excluded evidence allegedly included: documents concerning the establishment of a U.S. Trust wealth management account;[5] two certificates of deposit opened in the names of the plaintiff and the defendant; a commercial promissory note in the principal amount of $317,690.41, payable to the plaintiff and the defendant, which was held by the attorney for the defendant's estate, Theodore N. Phillips; and documents establishing a joint checking account for the

plaintiff and the defendant with Bank of America.

"The trial court's decision to admit or preclude evidence, and its determination as to whether evidence is relevant and probative, are subject to review for an abuse of discretion." *Fleming* v. *Dionisio*, 317 Conn. 498, 512, 119 A.3d 531 (2015). Here, however, we have no occasion to review whether the trial court abused its discretion in ruling as the plaintiff claims because the court never made the challenged ruling. In fact, each of the allegedly excluded documents was actually admitted into evidence.[6] For that reason, the plaintiff's first claim of error must obviously be rejected.

## II

As her second claim of error, the plaintiff argues that the trial judge should have recused himself from her case because he, as a married man, was biased against her because her claims arose at a time when she and the defendant were living together as an unmarried couple. Although the plaintiff never raised that concern at trial, much less moved for the judge's recusal on that or any other basis, she now asserts that the court erred by failing to recuse itself from this case sua sponte.

Pursuant to Practice Book § 1-22 (a), "[a] judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Rule 2.11 of the Code of Judicial Conduct . . . ." Pursuant to Practice Book § 1-23, "[a] motion to disqualify a judicial authority . . . shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time." Our Supreme Court recently has held, however, that there is no "per se rule that noncompliance with the . . . procedural requirements [of Practice Book § 1-23] is fatal to review." *State* v. *Milner*, 325 Conn. 1, 5, 155 A.3d 730 (2017). "Indeed, such review is authorized in part because a judge has an independent obligation to recuse herself or himself from a matter . . . sua sponte . . . if such judicial authority is disqualified from acting therein pursuant to [c]anon 3 (c) [now rule 2.11] of the Code of Judicial Conduct . . . . Practice Book § 1-22 (a)." (Internal quotation marks omitted.) Id., 7–8.

We review the plaintiff's claim for abuse of discretion. "Pursuant to our rules of practice; see Practice Book § 1-22; a judge should disqualify himself from acting in a matter if it is required by rule 2.11 of the Code of Judicial Conduct, which provides in relevant part that [a] judge shall disqualify himself . . . in any proceeding in which the judge's impartiality might reasonably be questioned including, but not limited to, the following circumstances . . . [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the

proceeding. Code of Judicial [Conduct, Rule] 2.11 (a) (1). . . . In applying this rule, [t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . and that they are able to put aside personal impressions regarding a party . . . the burden rests with the party urging disqualification to show that it is warranted." (Citation omitted; internal quotation marks omitted.) *Stefanoni* v. *Darien Little League, Inc.*, 160 Conn. App. 457, 464–65, 124 A.3d 999 (2015).

The plaintiff has failed to present any basis for finding that a reasonable person would question the trial judge's impartiality in this case, or thus that his disqualification from the case was warranted. Accordingly, we find that the court did not abuse its discretion in not recusing itself.

III

The plaintiff's third and fourth claims assert error in the trial court's rejection of several alternative theories upon which she claimed she was entitled to money damages against the defendant. She alleges the existence of express and implied contracts between her and the defendant. She also alleges that the defendant owed her a fiduciary duty, which he breached by withdrawing all of the money from joint accounts which she claims to have been opened and maintained for her financial support.

In resolving these claims at trial, the court was required to make factual findings as to the nature of the plaintiff's relationship with the defendant. "[T]he trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . .

Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 755, 159 A.3d 666 (2017).

The court found that the plaintiff's relationship with the defendant was purely a social one, in which the defendant supported the plaintiff financially while they were together without undertaking any obligation to support her in the future if and when their relationship ended. It also found that the defendant did not owe the plaintiff any fiduciary duty.

## A

As her third claim of error, the plaintiff argues that the trial court erred in finding that there was no express or implied contract between her and the defendant. "Whether a contract exists is a question of fact for the court to determine." (Internal quotation marks omitted.) *Joseph General Contracting, Inc.* v. *Couto*, 317 Conn. 565, 574–75, 119 A.3d 570 (2015).

The trial court cited to and relied upon substantial evidence in the record in reaching its conclusion that there was no contract between the plaintiff and the defendant. First, it held that no cause of action based upon a promise or requiring reasonable reliance could be based upon any of the poems the defendant had written to the plaintiff. Second, it found that the defendant repeatedly had made statements to the plaintiff inconsistent with the plaintiff's claim that he ever intended to give her any part of his valuable photographic collection. In a letter written in 2002 (2002 letter), for example, wherein the defendant promised to give the plaintiff several specific items of property from his home, he pointedly noted that the gift in question did not include "any items from my photographic collection." Later, in a 2006 memorandum (2006 memorandum) to his then current will, wherein the defendant stated his intention to leave the plaintiff several of his books, he similarly noted that no such book "related to the collection." Consistent with those writings, the court found that the defendant had never made any promise to the plaintiff, spoken or unspoken, that if she worked with him, he would give her any portion of his photographic collection.

The court further found that the plaintiff never had made any meaningful contribution to the defendant's investment ventures or photographic collection. To the contrary, it found that the photographic collection already was well established and the defendant already was active in collector's circles long before the plaintiff's relationship and alleged collaboration with the defendant began. The court thus found that the plaintiff's express and implied contract claims had no merit. Because there is evidence in the record to support the

findings of fact upon which the trial court based that decision, and we are not left with the conviction that a mistake has been made, we conclude that such findings were not clearly erroneous, and that the court's rejection of the plaintiff's contract claims must be affirmed.

B

As her fourth claim of error, the plaintiff argues that the trial court erred in failing to find that the defendant had breached a fiduciary duty to her arising from the nature of their relationship. In her complaint and at trial, the plaintiff alleged that the defendant owed her a fiduciary duty based upon the close, confidential relationship they shared in which she had been induced to become solely dependent upon him and in which he would handle all of their finances and major responsibilities for every aspect of their life together. She claimed that the defendant breached this duty to her by unilaterally withdrawing funds from accounts and financial instruments he allegedly had opened and maintained to provide for her support. The trial court rejected this claim based upon its findings that the parties' relationship was purely social and that any suggestion by the defendant to the plaintiff that he would provide for her care in the future had always been predicated on the assumption that such support would only be provided for so long as they maintained their social relationship. Hence, although the court also found that the defendant handled all of the bank accounts in which the plaintiff claimed an interest, it found that he did so primarily for his own benefit, not for the plaintiff's. The trial court's finding as to the nature of the parties' relationship is a factual determination, which we review to determine if it was clearly erroneous.

We have set forth previously the applicable standard of review. Measured by that standard, the court's findings were not clearly erroneous because they are supported by the record and they do not leave us with the conviction that a mistake has been made.

On appeal, unlike before the trial court, the plaintiff has attempted to reclassify her claim of breach of fiduciary duty as a claim arising from the parties' business relationship, which she now describes as a joint venture or a partnership, rather than from what she initially claimed to have been their dependency-inducing social relationship. This claim never was presented to or decided by the trial court. It is not the practice of this court to address such unpreserved claims on appeal. See generally *Connecticut Bank & Trust Co.* v. *Munsill-Borden Mansion, LLC*, 147 Conn. App. 30, 36, 81 A.3d 266 (2013) ("[w]e have said many times that [we] will not review a claim that is not distinctly raised at trial" [internal quotation marks omitted]); *Augeri* v. *Planning & Zoning Commission*, 24 Conn. App. 172, 179, 586 A.2d 635 ("this court cannot review a nonexistent ruling"), cert. denied, 218 Conn. 904, 588 A.2d 1381

(1991).

Against this background, to the extent that the plaintiff's breach of fiduciary duty claim was raised and decided by the trial court, we reject that claim on the basis that the trial court's determinations as to the nature of the parties' relationship, and the resulting lack of any fiduciary duty between them, were not clearly erroneous.

IV

As the plaintiff's fifth and final claim of error, she argues that the trial court erred in not fashioning a remedy that awarded her certain specific damages or other relief. In particular, she argues that the court should have awarded her: damages for dividends and income she should have received from her personal shares in Mattri Reinsurance Co., Ltd. (Mattri Reinsurance);[7] transfer of the personal property gifted to her in the defendant's 2002 letter; transfer of the personal property listed in the 2006 memorandum to the defendant's then-current will; damages for the money in two certificates of deposit which the defendant had opened in his own and the plaintiff's names, but which the defendant had closed unilaterally after his relationship with the plaintiff ended and she moved out of his home; money in the U.S. Trust wealth management account that the defendant had opened in his own name only, which represented approximately one-half of the proceeds from the sale of the defendant's photographic collection;[8] damages for the money in a joint checking account that the defendant had closed unilaterally in January, 2013; damages for the value of the commercial promissory note signed by Attorney Phillips to the plaintiff and the defendant; the benefits from the defendant's veteran's life insurance policy; damages representing one third of the defendant's estate, as described in his wills of 2003 and 2010; and the sum of one and one-half million dollars, which the plaintiff claims that the defendant offered her to move out of his home after their relationship ended.

"Because a trial court has broad discretion to determine whether damages are appropriate, we . . . review a damages award only for a clear abuse of discretion." *Lyme Land Conservation Trust, Inc.* v. *Platner*, supra, 325 Conn. 763. We conclude that the trial court did not abuse its discretion in determining what damages and other relief to award the plaintiff.

The court concluded that the plaintiff owned shares in Mattri Reinsurance, but that there was no credible evidence that the defendant had blocked her from receiving dividend payments on those shares. Any claims she had against the company or its other shareholder regarding her ownership of shares or right to receive dividends were not part of this lawsuit, and thus it was not an abuse of discretion for the trial court

to refuse to address such claims.

Regarding the gifted personal property that was listed in the defendant's 2002 letter, the court did award the plaintiff as much of that property as she proved was to have been given to her by that document. The plaintiff failed to prove any other contents of the document, and the court was thus unable to award any other items to her.

The court found that the 2006 memorandum to the defendant's then current will was a document intended by the defendant to accompany that earlier will, as long as it remained in full force and effect, and thus that the items listed in it were to be given to the plaintiff only if the defendant died before the will was destroyed, superseded or amended.[9]

The funds in the certificates of deposit and joint bank accounts, which the defendant opened and maintained in his and the plaintiff's names, were held in those accounts for their joint benefit for as long as they maintained their relationship, and any right of survivorship in them arising from their status as joint accounts could only be exercised if the accounts remained open until the defendant's death. The court also concluded that, while the defendant might at one time have contemplated opening a joint U.S. Trust account with the six million dollars from the sale of the photographic collection in both his and the plaintiff's names, he ultimately opened such an account solely in his own name, and thus did not establish a trust for the plaintiff's benefit with that money.

The court further held that, although the plaintiff had a right to be paid on the commercial promissory note held by Attorney Phillips, her claim for that money must be brought against Phillips, not against the defendant. The life insurance policy the plaintiff describes was an exhibit for identification only (plaintiff's exhibit 73), and therefore the court did not abuse its discretion in not considering it as a basis for awarding the plaintiff damages. The court also did not abuse its discretion in not awarding the plaintiff what she would have inherited under previous drafts of the defendant's will, for the defendant's will would only be enforceable if it was still in force and effect at the time of his death.

Finally, the court did not abuse its discretion in not awarding the plaintiff the one and one-half million dollars to which she claimed she was entitled as consideration for leaving the defendant's home. The court found that the plaintiff did not have any right to the home because the parties had never jointly owned it, and that even if the defendant had once told the plaintiff that the home would one day be hers, that promise would have been conditioned upon the continuation of their social relationship until the time of his death. As to the plaintiff's additional claim that the defendant had

promised her one and one-half million dollars as consideration for her moving out of his home, the court found that she had undermined any legal basis for that claim by arguing that the defendant was completely incompetent when he allegedly made that promise. For this reason, the court did not abuse its discretion in not awarding the plaintiff any portion of the home's value in damages.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The parties were never married, however, in the course of their relationship, the plaintiff legally changed her name to the defendant's last name.

[2] The case originally was assigned for oral argument on January 9, 2017, but was stayed on December 20, 2016, due to the death of the defendant. Pursuant to General Statutes § 52-599 (b), the plaintiff filed a motion to substitute the temporary administrator of the defendant's estate for the defendant, which this court granted. The court ordered the temporary administrator to file a written statement regarding whether he had the authority to defend this appeal. The temporary administrator filed a letter with the court stating that he did have the authority, and thereafter, the stay was lifted.

[3] Ultimately, the court awarded the plaintiff any *carte de visite* photographs acquired exclusively by or for the plaintiff that were contained in the defendant's home as of January 1, 2013; a Katherine Hepburn related lithograph; a 1910 landscape in oil of a farm; and the following items that were in the defendant's home in May, 2002: a piano, two oil paintings by George M. Bruestle, a large crane from China, and any decorative screens.

[4] The plaintiff also claims on appeal that the trial court erred in finding that the plaintiff did not "[contribute] anything to the joint venture" she alleged that she engaged in with the defendant. Pursuant to her complaint, the trial court evaluated her "joint venture" claims under the auspices of her stated claims in contract, implied contract, promissory estoppel, and fraud. For the purposes of this appeal, we address the plaintiff's "joint venture" claim in the context of her claims of express and implied contract, which is the only claim addressed by the trial court that the plaintiff has raised on appeal.

[5] The plaintiff introduced evidence of both an incomplete application for a U.S. Trust wealth management account and the records of a different U.S. Trust wealth management account that had been opened. The incomplete application had signature lines for both the plaintiff's and the defendant's names, although only her signature was on the document. The account that had been opened was in the defendant's name only, and contained six million dollars.

[6] The incomplete U.S. Trust wealth management account application is plaintiff's exhibit 29; the statements of the opened U.S. Trust wealth management account are in plaintiff's exhibit 89; records of the certificates of deposit are in defendant's exhibit 524; the commercial promissory note is in plaintiff's exhibit 33; and the records of the joint checking accounts are in plaintiff's exhibit 27.

[7] Mattri Reinsurance is a company created by the defendant in which the plaintiff owned shares.

[8] The plaintiff does not make a claim on appeal to the other half of the proceeds from the sale of the collection.

[9] At the time of the trial court's decision, the defendant was still alive.