******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THEODORE VECCHIARINO *v.* EDWARD B. POTTER, TEMPORARY EXECUTOR (ESTATE OF MATTHEW R. ISENBURG), ET AL.
## (AC 45758)

Prescott, Elgo and Bishop, Js.*

### *Syllabus*

The defendant E, a former romantic partner of the decedent, M, appealed to this court from the judgments of the Superior Court approving a settlement agreement that resolved a dispute involving the beneficiaries of a contested will and M's heirs-at-law. Prior to the termination of their romantic relationship, E had been named a beneficiary in wills executed by M in 2003 and 2010. M died in 2016, and the plaintiff, a business partner of M, petitioned the Probate Court to admit M's 2014 will. E was neither a named beneficiary under the 2014 will, nor was she an heir-at-law. After the petition to admit the 2014 will was filed, certain of M's heirs-at-law objected to its admission and to the appointment of the plaintiff as the administrator of the estate. Thereafter, the Probate Court issued a written decree in which it concluded that, inter alia, M had been unduly influenced in executing the contested 2014 will and that, therefore, it should not be admitted to probate. The plaintiff and another named beneficiary of the contested will filed separate appeals to the Superior Court challenging this decree, which were subsequently consolidated. During the pendency of the claims in probate, E filed an appearance in the Probate Court as a creditor of M's estate on the basis of claims that she had unsuccessfully brought against M in a civil action while he was still alive. The Probate Court denied her creditor claims on the grounds that they were barred by res judicata and collateral estoppel, and she appealed to the Superior Court, which dismissed the appeal. E did not petition the Probate Court to admit either of the wills from 2003 or 2010 as the valid and operative will of the decedent. Instead, she filed a letter with the Probate Court and attached two Probate Court forms with copies of the 2003 and 2010 wills. Thereafter, all beneficiaries named in the 2014 will and the heirs-at-law who contested the will entered into an agreement in full compliance with the provisions of the applicable statute (§ 45a-434 (c)), which fully resolved all the issues between those parties with respect to the Probate Court decision on the application of the 2014 will and the resulting probate appeals. The Superior Court approved the settlement agreement over E's objection, in which she claimed, inter alia, that she was a "[person] interested in the estate" for purposes of settlement in accordance with § 45a-434 (c) and the agreement could not be approved without her participation and consent. *Held* that the trial court properly found that E had failed to establish any interest sufficient to require her participation in the agreement, as E was neither a named beneficiary of the only will that was sought to be admitted to probate and which was the subject of the probate appeals, nor was she recognized under intestacy statutes as an heir-in-law: contrary to E's claim that she attempted to have the 2003 and 2010 wills, in which she was named a beneficiary, admitted via her letter sent to the Probate Court, no other application to admit any other will of the decedent was before the Probate Court, the Probate Court did not treat the defendant's letter or its attachments as a petition to admit the wills to probate and E never raised a claim that the Probate Court improperly declined to consider her letter as a petition to admit one or both of the wills in any appeal from any of the relevant Probate Court decrees; moreover, E's failure to seek to admit any other will for probate rendered her related assertion that her pecuniary interest in the estate might have been established through application of the doctrine of dependent relative revocation equally inapposite under the facts of this case, as the record was inadequate to have concluded that proper application of that doctrine would necessarily have revived any will in which E had any additional testamentary interest; furthermore, even assuming without deciding that persons interested in M's estate pursuant to § 45a-434 (c) could include an appearing creditor of the estate, E

failed to establish such an interest in M's estate, as her civil action against the decedent, which was initiated prior to his death, was, with limited exception, fully and finally resolved against her, and her attempt to revive her claims or assert others before the Probate Court were rejected, her subsequent appeal from that ruling was dismissed, and, accordingly, principles of res judicata barred E from attempting to resurrect her creditor claims via the arguments in this appeal.

Argued October 5, 2023—officially released February 13, 2024

*Procedural History*

Appeals from the decree of the Probate Court for the district of Saybrook denying admission of the will of Matthew R. Isenburg to probate and appointing Edward B. Potter as temporary administrator of the estate of Matthew R. Isenburg, brought to the Superior Court in the judicial district of Middlesex, where the appeals were consolidated; thereafter, Danielle P. Ferrucci, the successor temporary administrator of the Estate of Matthew R. Isenberg, filed motions for approval of a mutual distribution, release and settlement agreement; subsequently, the defendant Elizabeth Isenburg filed an objection to the motions for approval of the mutual distribution, release and settlement agreement; thereafter, the court, *Hon. Edward S. Domnarski*, judge trial referee, granted the motions for approval of the mutual distribution, release and settlement agreement, and rendered judgments thereon, from which the defendant Elizabeth Isenberg appealed to this court. *Affirmed.*

*Elizabeth Isenburg*, self-represented, the appellant (defendant).

*Christoher J. Cahill*, with whom, on the brief, was *Patrick M. Fahe*y, for the appellee (Danielle P. Ferrucci, successor temporary administrator of the estate of Matthew R. Isenburg).

*Opinion*

PRESCOTT, J. Matthew R. Isenburg (decedent) died on November 14, 2016, at the age of eighty-nine. In the underlying probate proceedings involving a contest to his will dated March 13, 2014, the beneficiaries named in the contested will and the decedent's heirs-at-law, who were omitted as beneficiaries from the will, resolved their dispute regarding its validity by entering into a mutual distribution, release, and settlement agreement (settlement agreement) that subsequently was approved by the Superior Court. In this appeal from the judgments of the Superior Court approving the settlement agreement, the defendant Elizabeth Isenburg, a former romantic partner of the decedent, who is neither a named beneficiary under the contested will nor an heir-at-law of the decedent,[1] claims that she is a "[person] interested in the estate" pursuant to General Statutes § 45a-434 (c)[2] and that the court should not have approved the settlement agreement without her participation in it.[3] We are not persuaded by her claim and, accordingly, affirm the judgments of the Superior Court.

The following undisputed facts and procedural history are relevant to this appeal. In 2013, the defendant initiated a civil action against the decedent, who was still living at the time, following the breakup of their relationship (civil action). In that action, she asserted that the decedent had made gifts and promises to her that entitled her to recover $6,000,000 in cash, real property, and certain personalty from the decedent. Following a trial, the court rejected most of her claims, awarding only limited relief. She subsequently appealed to this court, which affirmed the judgment of the trial court. See *Isenburg* v. *Isenburg*, 178 Conn. App. 805, 177 A.3d 583 (2017), cert. denied, 328 Conn. 916, 180 A.3d 963 (2018).

After the decedent died in August, 2016, the plaintiff, Theodore Vecchiarino, a business partner of the decedent, petitioned the Probate Court for the district of Saybrook to admit the decedent's March 13, 2014 will. The plaintiff also sought to be appointed as the administrator of the estate. In addition to the plaintiff, the decedent named in the will as beneficiaries Steven Mossberg, a long-time business associate of the decedent; Sharon Goffe, the decedent's live-in companion and caretaker; and others.[4] The will, however, omitted as beneficiaries any of the decedent's heirs-at-law.

After the petition to admit the will was filed, certain of the decedent's heirs-at-law objected to its admission and to the appointment of the plaintiff as the administrator of the decedent's estate.[5] These heirs-at-law asserted in their objection that the March 13, 2014 will was invalid because of undue influence and that the plaintiff had misused the decedent's funds and breached his fiduciary

obligation while serving as the decedent's attorney-in-fact under a power of attorney executed by the decedent on December 20, 2012. The Probate Court appointed Edward B. Potter to be the temporary administrator of the decedent's estate.[6] The Probate Court conducted multiple evidentiary hearings on these claims.

On December 26, 2016, while her appeal to this court from the judgment in the civil action was still pending, the defendant filed an appearance on her own behalf in the Probate Court and asserted that she was a creditor of the decedent's estate on the basis of her claims that she unsuccessfully had brought against him in her civil action (creditor claims). Although she had been named as a beneficiary in prior wills executed by the decedent in 2003 and 2010 prior to the termination of their romantic relationship, the defendant did not petition the Probate Court to admit any of these wills as the valid and operative will of the decedent.

On December 19, 2017, this court affirmed the judgment of the trial court in the defendant's civil action brought against the decedent. *Isenburg* v. *Isenburg*, supra, 178 Conn. App. 820. Our Supreme Court subsequently denied her petition for certification to appeal, thereby ending her attempts to recover against the decedent directly. See *Isenburg* v. *Isenburg*, 328 Conn. 916, 180 A.3d 963 (2018).

On July 27, 2018, the Probate Court issued a written decree in which it concluded that the decedent had been unduly influenced in executing the contested will and that, therefore, it should not be admitted to probate. It also found that certain transfers that the plaintiff made pursuant to the power of attorney were void and must be returned to the decedent's estate. The plaintiff and Goffe filed separate appeals to the Superior Court challenging this decree.[7] These actions subsequently were consolidated.

On January 15, 2020, the Probate Court issued a written decree denying the defendant's creditor claims on the ground that they were barred by res judicata and collateral estoppel because they had been asserted unsuccessfully (or could have been asserted) in her civil action against the decedent while he was still alive. The defendant nominally appealed that decree to the Superior Court. See *Isenburg* v. *Vecchiarino*, Superior Court, judicial district of Middlesex, Docket No. CV-20-5012822-S (February 21, 2020). Instead of reasserting those creditor claims, however, the defendant raised different claims against the plaintiff and others, alleging that they had interfered with agreements between her and the decedent. That appeal ultimately was dismissed for lack of subject matter jurisdiction because it did not seek review of the decree from which the defendant appealed and, thus, was beyond the scope of a proper probate appeal.

On June 1, 2022, in the underlying consolidated probate appeals, Attorney Danielle P. Ferrucci, as temporary

administrator of the decedent's estate, filed identical motions for approval of the settlement agreement that had been executed by all the various parties interested in the decedent's estate as named beneficiaries under the challenged will or as heirs-at-law. The defendant did not participate in the settlement negotiations or join the settlement agreement that formed the basis of the motions.

Pursuant to the terms of the settlement agreement, the parties, among other things, agreed that the decedent's March 3, 2014 will would not be admitted to probate and that the estate would be administered as intestate. The plaintiff and Goffe agreed to make payments to the estate in exchange for the withdrawal of certain monetary claims against them. They also agreed that they would waive any interest in the estate. Finally, the agreement set forth the distribution and division of the estate to the heirs-at-law in various percentages.

The self-represented defendant objected to the motions for approval of the settlement agreement because she was not a party to it. The precise grounds of her objection are difficult to discern, but it appears that she asserted three primary grounds as to why the settlement agreement should not be approved without her participation. First, she relied on the fact that she appeared and participated as an interested party in the underlying probate proceedings. Second, she appeared to claim that certain assets of the decedent fraudulently were transferred into the estate and should not be treated as assets of the estate but, in fact, belonged to her. Finally, she appeared to contend that the doctrine of dependent relative revocation[8] applied and that she is a named beneficiary under a prior will. On the basis of these contentions, she argued that she is a "[person] interested in the estate" pursuant to § 45a-434 (c) and that the settlement agreement cannot be approved in the absence of her participation and consent to it.

On August 17, 2022, the Superior Court, *Hon. Edward S. Domnarski*, judge trial referee, approved the settlement agreement over the objection of the defendant.[9] In a memorandum of decision, the court concluded that the defendant's mere participation in the underlying Probate Court proceedings did not, by itself, give rise to an interest in the estate within the meaning of § 45a-434 (c).[10] The court also reasoned that the defendant never challenged the admission of the May 13, 2014 will nor did she seek to admit for probate any earlier will under which she could claim an interest as a beneficiary. Under these circumstances, the court found that the defendant's status as a potential beneficiary of the decedent's estate was too remote to bring her within the scope of "persons interested in the estate" for purposes of settlement in accordance with § 45a-434 (c). The court concluded: "In these probate appeals, the circle of possible 'persons interested in the estate' are the beneficiaries under the decedent's March 13, 2014 will, the parties who appealed the Probate Court decision related to that will—notably, also benefici-

aries under that will—and the decedent's heirs-at-law. All of those parties, and the successor temporary administrator, have agreed to the mutual distribution of the decedent's estate. [The defendant] is an outsider to the mutual distribution proceedings." The court, accordingly, granted the motions for approval of the settlement agreement. This appeal followed.

The sole claim raised by the defendant on appeal is that the Superior Court improperly granted the motions for approval of the settlement agreement because she was among the "persons interested in the estate" for purposes of § 45a-434 (c) and, therefore, any agreement reached without her participation was invalid. We agree with the Superior Court that the defendant failed to establish any interest sufficient to require her participation in the agreement. Accordingly, we reject her claim.[11]

We begin with our standard of review. To the extent that the defendant's claim "presents a question of statutory interpretation, our review is plenary. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case." (Citation omitted; internal quotation marks omitted.) *Falvey* v. *Zurolo*, 130 Conn. App. 243, 249, 22 A.3d 682 (2011).

Section 45a-434 (c) sets forth procedures by which parties may agree on the division of a contested estate. As previously noted, § 45a-434 (c) provides in relevant part: "Whenever there has been a contest with respect to the validity, admissibility to probate or construction of a will, if all persons interested in the estate, including persons interested as contestants or fiduciaries acting on behalf of a contestant, make and file in the court an agreement as to the division of the estate, in writing, executed and acknowledged in the same manner as provided for conveyances of land in section 47-5, such agreement shall be a valid division of the estate if approved by the Court of Probate. Any such fiduciary may petition the court of probate which appointed him for permission to enter into such an agreement. The court of probate may grant such petition or may deny such petition. . . ."[12]

In the present case, an agreement in full compliance with the provisions of § 45a-434 (c) was reached between all beneficiaries named in the March 13, 2014 will and the heirs-at-law of the decedent, who contested the will. The agreement fully resolved all issues between those parties with respect to the July 27, 2018 Probate Court decision on the application to admit the March 13, 2014 will and the resulting probate appeals. In other words, all of the parties affected and having a direct interest in the distribution of the decedent's estate vis–vis the March 13, 2014

will have agreed to a mutual distribution of the estate assets. The defendant maintains that she is also a member of the group that comprises "all persons interested in the estate" and that, therefore, she was a necessary party to any agreement.

No appellate court definitively has construed the term "all persons interested in the estate" as used in § 45a-434 (c) or set forth an exhaustive list of those persons or entities intended by that term. Nevertheless, given that the clear and obvious purpose of the statute is to facilitate the settlement of a dispute amongst "devisees, legatees or heirs"; General Statutes § 45a-434 (b); for the purpose of reaching a mutual agreement regarding distribution of the estate, "persons interested in the estate"; General Statutes § 45a-434 (c); certainly must include any party entitled to some distributive portion of the estate, whether through the will or, if the will were invalidated, by intestacy. See *Green* v. *King*, 104 Conn. 97, 103–104, 132 A. 411 (1926) (indicating that necessary parties for mutual distribution agreement to resolve contest involving will codicil were beneficiaries and heirs with pecuniary interest in distribution).

Section 45a-434 (c) also states that "persons interested in the estate" expressly include those parties contesting the admissibility or construction of a will. Logically, a person with a claim to a distributive portion of an estate arguably also could include a creditor of the estate or other person with a colorable claim to a portion of the estate's undistributed assets. In the present case, however, it is unnecessary for us to construe more definitively the term "persons interested in the estate" because the defendant has failed to demonstrate that she has *any* distributive interest in the estate that would warrant her inclusion as of right in any settlement negotiations. In short, we agree with the Superior Court that the defendant has failed to establish that she has some pecuniary interest, as contemplated under the relevant statutory scheme, that would require her participation in the agreement regarding mutual distribution of the decedent's estate. We reach this conclusion for the following reasons.

First, it is undisputed that the defendant is neither a named beneficiary of the only will that was admitted to probate and which was the subject of the two probate appeals, nor is she recognized under our intestacy statutes as an heir-at-law.[13] The defendant contends that she did, in fact, attempt to have earlier wills in which she had been named a beneficiary admitted when she sent a letter dated May 29, 2018, to the Probate Court. As found by the Superior Court, however, no other application to admit any other will of the decedent was before the Probate Court.

The defendant attached two Probate Court forms to her May 29, 2018 letter, one form PC-211 for each copy of the decedent's 2003 and 2010 wills. Probate Court form PC-211 is entitled "Affidavit for Filing Will Not Submitted

for Probate" and contains an instruction that "[a]ny person may use this form to file original will(s) and codicils(s), if any, when the will is not being submitted for probate." The defendant could have sought to have these prior wills admitted for probate by filing them with Probate Court form PC-200, which is entitled "Petition/Administration or Probate of Will," and contains an instruction that "[a]ny person may use this form to petition the court for administration or probate of a will and the appointment of an administrator or executor."

The Probate Court did not treat the defendant's May 29, 2018 letter or its attachments as a petition to admit the wills to probate and she never raised a claim that the Probate Court improperly had declined to treat her letter as a petition to admit one or both of the wills in any appeal from any of the relevant Probate Court decrees. Finally, we note that the defendant appears to have conceded before the Superior Court that she never sought to have admitted for probate any of the wills in which she is named as a beneficiary but, instead, blamed the plaintiff for neglecting to complete and file a form PC-200.

Second, the defendant's failure to seek to admit any other will for probate renders the defendant's related assertion that her pecuniary interest in the estate may be established through application of the doctrine of dependent relative revocation equally inapposite. "The gist of the doctrine [of dependent relative revocation] is that if a testator cancels or destroys a will with a present intention of making a new one immediately and as a substitute and the new will is not made or, if made, fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy, and the old one will be admitted to probate in the absence of evidence overcoming the presumption. . . . The rule has been more simply stated in these words: [W]here the intention to revoke is conditional and where the condition is not fulfilled, the revocation is not effective. . . . [The doctrine of dependent relative revocation] is a rule of presumed intention rather than of substantive law . . . and is applicable in cases of partial as well as total revocation. . . . That it can only apply when there is a clear intent of the testator that the revocation of the old is made conditional upon the validity of the new is well [settled]." (Citations omitted; internal quotation marks omitted.) *La Croix* v. *Senecal*, 140 Conn. 311, 315, 99 A.2d 115 (1953).

Moreover, the modern approach to this common-law doctrine generally is to apply it only in cases in which relatively minor changes exist between the old and new wills, rather than wholesale changes in testamentary purpose. See id., 317 (noting invalid codicil at issue made "very minor change" to original will); *Watson* v. *Landvatter*, 517 S.W.2d 117, 122 (Mo. 1974) (en banc) (holding that doctrine was inapplicable in case in which "family situation had changed radically between the time of the execution of the original will and the date of the alter-

ations"); see also 95 C.J.S. 378–79, Wills § 408 (2022) ("if a substantial disparity in the terms of the two instruments reflects the testator's disfavor of the original will, it cannot be concluded that the testator would have preferred for the original will to control the distribution of the estate in the event that the subsequent will proves ineffective"). Accordingly, the doctrine of dependent relative revocation, although widely recognized, must be applied narrowly and with caution. 95 C.J.S., supra, p. 379.

There is simply no proper legal application of the doctrine of dependent relative revocation under the facts of the present case. The Superior Court made an undisputed finding that the decedent executed eight different wills between 2003 and 2014. First, as we have previously indicated, the only will that properly was before the Probate Court was the March 13, 2014 will. Accordingly, if the Superior Court were to agree with the Probate Court's determination that the March 13, 2014 will was invalid due to undue influence, it is unclear which of the earlier wills, if any, would be revived for administration if the doctrine of dependent relative revocation were deemed applicable or whether distribution of the estate would, by necessity, proceed under our intestacy statutes. In other words, the record is simply inadequate to conclude that proper application of the doctrine of dependent relative revocation would necessarily revive any will in which the defendant had any additional testamentary interest. Furthermore, even if any will in which the defendant was named a beneficiary were properly before the Probate Court, it is clear that such a will would not properly be admitted and revived under the doctrine of dependent relative revocation because the decedent, rather than making only relatively minor changes to his will, manifested a clear and significant change in testamentary purpose by completely removing the defendant as a beneficiary following the end of their romantic relationship. It would strain logic to conclude that the decedent would have preferred an earlier will to control the distribution of his estate rather than intestacy. Accordingly, we reject the defendant's suggestion that she retains an interest in the estate because she was a named beneficiary in an earlier revoked will.

Finally, even assuming without deciding that "persons interested in the estate" could include an appearing creditor of the estate or someone with a similarly colorable pecuniary interest therein, the defendant has failed to establish such an interest in the decedent's estate. Her civil action against the decedent, which was initiated prior to his death, was, with limited exception, fully and finally resolved against her. See *Isenburg* v. *Isenburg*, supra, 178 Conn. App. 805. Her attempt to revive her claims or to assert others before the Probate Court was squarely rejected, and her subsequent appeal from that ruling was dismissed. Principles of res judicata thus bar the defendant from attempting to resurrect her creditor claims via her arguments in these probate appeals.

In short, having thoroughly reviewed the record and briefs in this matter, we reject all of the defendant's various arguments advanced to establish that she was a necessary party to the underlying settlement agreement. Accordingly, we conclude that the Superior Court properly approved it.

The judgments are affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Elizabeth Isenburg and the decedent never married. In fact, the decedent remained married to Elinor Isenburg until his death. Nevertheless, the defendant legally changed her name from Elizabeth Soderberg to Elizabeth Isenburg.

[2] General Statutes § 45a-434 (c) provides in relevant part: "Whenever there has been a contest with respect to the validity, admissibility to probate or construction of a will, if all persons interested in the estate, including persons interested as contestants or fiduciaries acting on behalf of a contestant, make and file in the court an agreement as to the division of the estate, in writing, executed and acknowledged in the same manner as provided for conveyances of land in section 47-5, such agreement shall be a valid division of the estate if approved by the Court of Probate. Any such fiduciary may petition the court of probate which appointed him for permission to enter into such an agreement. The court of probate may grant such petition or may deny such petition. . . ."

[3] The following parties were named as defendants in the underlying probate appeals: Edward B. Potter, as temporary executor of the decedent's estate; Edward Isenburg; Mark Isenburg, both individually and as conservator for Elinor Isenburg's estate; Sharon Goffe; Steven Isenburg; Steven Mossberg; Michael Lloyd; Andrew Isenburg; and Lynn Heckett. We refer to Elizabeth Isenburg as the defendant and to the other defendants by name when necessary.

[4] The other named beneficiaries are Steven Isenburg, Michael Lloyd, and Andrew Isenburg.

[5] These heirs-at-law included Elinor Isenburg, the decedent's surviving spouse; and Lynn Heckett, the daughter of the decedent and Elinor Isenburg.

[6] Potter died on April 2, 2021. In a decree dated May 5, 2021, the Probate Court appointed Attorney Danielle P. Ferrucci as the successor temporary administrator of the estate.

[7] Other civil actions were also commenced in the Superior Court against individuals alleged to have participated in or benefited from a dissipation of the decedent's estate. See *Potter* v. *Vecchiarino*, Superior Court, judicial district of Middlesex, Docket No. CV-19-5011790-S; *Isenburg* v. *Vecchiarino*, Superior Court, judicial district of Middlesex, Docket No. CV-19-6025255-S. The decedent's daughter, Lynn Heckett, also brought a tort action against the estate asserting that the decedent had engaged in intentional and negligent infliction of emotional distress toward her. *Heckett* v. *Potter*, Superior Court, judicial district of Middlesex, Docket No. CV-19-6025055-S.

[8] The doctrine of dependent relative revocation provides that if a testator revokes a prior will by executing a new will and the new will is not effective for any reason, then "it [shall] be presumed that the testator preferred the old will to intestacy, and the old one [shall] be admitted to probate in the absence of evidence overcoming the presumption." (Internal quotation marks omitted.) *Churchill* v. *Allessio*, 51 Conn. App. 24, 27, 719 A.2d 913, cert. denied, 247 Conn. 951, 723 A.2d 324 (1998).

[9] Although § 45a-434 (c) provides in relevant part that a settlement agreement executed in accordance with all statutory requirements is valid "if approved by the Court of Probate," the Superior Court had the authority to act on the motion for approval given the procedural posture of this case, and we reject the defendant's arguments to the contrary. It is axiomatic that, "[w]hen entertaining an appeal from an order or decree of a Probate Court, the Superior Court *takes the place of and sits as the court of probate.* . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or [common-law] jurisdiction, but of a Probate Court." (Emphasis added; internal quotations marks omitted.) *Salce v. Cardello*, 348 Conn. 90, 103, 301 A.3d 1031 (2023). Given that the settlement agreement in the present consolidated cases was reached and approval was sought within the confines of two valid probate appeals, the Superior Court, exercising the powers of a Probate Court, had the necessary authority to approve it.

[10] The court reasoned as follows: "The appearance [the defendant] filed in

the Probate Court allowed [her] to receive notice of, and perhaps participate in, the subject probate proceedings. Having filed an appearance in the Probate Court, she was served notice of the two probate appeals filed in this court. [The defendant] did file appearances in the two probate appeals. Those appearances alone do not transform and elevate her status as a party interested in the probate and appeal proceedings, to a party that is interested in the estate for purposes of a mutual distribution." (Emphasis omitted.)

[11] The appellee, Attorney Ferrucci, acting in her role as successor temporary administrator, urges us to decline to review the defendant's claim as inadequately briefed. It is axiomatic that appellate courts "are not required to review issues that have been improperly presented to this court through an inadequate brief." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803, 256 A.3d 655 (2021). Although we agree that the defendant's brief is hardly a model of clarity, and that it contains a sparsity of relevant analysis, we nevertheless conclude that it manages to cross the requisite minimum threshold of adequacy to warrant our review of the asserted claim.

[12] As the Superior Court indicated in its memorandum of decision approving the parties' agreement in this matter, "[m]utual distribution agreements are favored in probate appeals involving distribution of estates." The rationale is that "[t]he result [of a mutual agreement between all interested parties] is that which the law was ready and seeking to accomplish; that which it had provided the machinery to accomplish. That the result has been obtained without a resort to the machinery, creates no legal irregularity upon which the law puts the stamp of its disapproval." *Merwin's Appeal from Probate*, 75 Conn. 33, 37, 52 A. 484 (1902).

[13] An "heir-at-law" or "legal heir" is a person "who would have been entitled to inherit from [the deceased] under our statutes of distribution, had he died intestate." *Daniels* v. *Daniels*, 115 Conn. 239, 240–41, 161 A. 94 (1932); see General Statutes §§ 45a-425 through 45a-457 (statutes of distribution).